opinion of the court
Joseph J. Sedita, J.
This matter has been brought on by an order to show cause why the certificate of nomination of Amel S. Jowdy, as the Republican and Conservative candidate for the position of Cambria Town Justice, should not be declared invalid by the Niagara County Commissioners of Elections.
The undisputed facts which form the scenario within >zhich this matter is brought before this court begin with the resignation of Cambria Town Justice Amel S. Jowdy in June of 1981. This resignation apparently was made in *18 order for Jowdy to protect his rights in the New York State Retirement System. At the time of said resignation, approximately two and one-half years remained in his term of office as Town Justice. (Term ending Dec. 31, 1983.) Subsequent to his resignation, he was reappointed by the town board for the balance of the term.
In August of this year, respondent Jowdy was advised that petitioner’s Democratic Party designating petitions had been filed with the board of elections for the position of Town Justice. Upon inquiry, he was advised by the County Attorney’s office that pursuant to subdivision 5 of section 64 of the Town Law, an election should have been held to fill the unexpired portion of his term at the next annual election after his resignation. He was, therefore, unlawfully serving in the Justice position and said position was, in fact, open until filled by the electoral process. At the time respondent Jowdy became fully aware of this situation and its legal consequences, the time period for circulating regular party petitions had passed.
Respondent Jowdy sought to correct the oversight by obtaining certificates of nomination authorized by the county executive committees of the Republican and Conservative Parties. Subsequent to the filing of these certificates, respondent Jowdy filed acceptances of those nominations. Additionally, he has filed independent party petitions under the name of an independent party called the “Concord Party”.
The essential issue before this court then, is whether or not the nomination procedure utilized by the Republican and Conservative Parties was sufficient to legally permit the placement of his name on the ballot this November as the candidate of the respective Republican and Conservative Parties. The court has found no case in point on this issue and this would, therefore, appear to be a case of the first impression.
The statutory provision which governs party nominations for town office is section 6-108 of the State Election Law. This section generally provides that these nominations (where not otherwise provided for by law) are to be governed by the rules of the respective party county committees.
*19 Let us first look to the Republican Party rules. In dealing with these rules the court is faced with a somewhat unusual situation in that two different sets of rules have been submitted to the court. The more recent set of rules was adapted by the county Republican committee in April of this year and filed at the county board of elections on September 21 of this year. The other set of rules or “old” rules (copy attached to respondent dowdy’s answer to this petition) apparently were in effect prior to the adoption of the “new” rules. Although the “new” rules were adopted in April, they were not filed until September 21 which was after the time for filing party nominations. Subdivision 1 of section 2-114 of the Election Law provides in part that: “No rule or amendment thereof shall be effective until the filing thereof”. A question, therefore, arises as to which set of rules controlled the Republican Party nomination procedure. This question only becomes relevant, however, if the result of our determination would be different under the different set of rules. Initially, let us look, therefore, at both sets of rules.
The “old” set of rules provides for the establishment of town committees (§15), and for the indorsement of countywide candidates at meetings of the county committee (§§ 16-18). Section 19 of these rules sets forth in detail a procedure for town nominations combining a “caucus” process and primary. The “new” rules in section 19 state that: “Towns and cities shall operate under the petition system.” It is obvious that neither of these procedures was followed in attempting to effectuate this nomination. Our problem is not resolved, however, because both “old” and “new” rules grant the executive committee certain “general” powers and the issue then becomes whether or not these “general” powers authorize intercession where there has been a failure to comply with enumerated procedural mandates for the effectuation of town nominations.
The relevant parts of these “general” provisions contain similar language. Section 6 of both sets of rules under the heading “Executive Committee” states in part that the executive committee has “full powei and authority to do any act or thing required by the Election Law to be done by the County Committee and for which no by-law has been *20 adopted by the County Committee.” Section 10 of both sets of rules establishes the executive committee as a “Committee to Fill Vacancies” with “the power to fill any other vacancy not provided for by law”.
By referring to the party rules, the statute gives the rules, in effect, the force of law, where they are not otherwise in conflict with law or public policy. We look, therefore, to the rules of construction for guidance in resolving our dilemma.
Section 97 of the State rules for construction and interpretation states in part: “all parts * * * are to be read * * * together to determine the * * * intent.” (McKinney’s Cons Laws of NY, Book 1, Statutes.)
Subdivision a of section 98 of this same volume states in part: “[a]ll parts * * * must be harmonized with each other” (McKinney’s Cons Laws of NY, Book 1, Statutes).
Section 238 of the rules of construction and interpretation states in part: “[WJhenever there is a general and particular provision * * * the general does not overrule the particular but applies only where the particular enactment is inapplicable.” (McKinney’s Cons Laws of NY, Book 1, Statutes.)
The same rule of construction is utilized in the construction and interpretation of the language of private agreements. (See 10 NY Jur, Contracts, § 217.)
The issue then which forms the crux of our decision herein is whether these “general” provisions permit the executive committee to “bypass” specifically mandated procedures in a case such as this where they have not been followed due to neglect or oversight.
We feel that the best interpretation of these general powers is that they were intended to “fill in the gaps” where the normal process is disrupted by unforeseen or unforeseeable circumstances or occurrences (i.e., the untimely death of a candidate). Where regular and anticipated procedures (such as candidate nominations) are concerned the specifically mandated procedures should be followed. This interpretation gives effect and harmony to all parts of these rules, and is in accord with the rule of *21 construction which applies a “general” provision only where a particular provision does not control the situation.
The vacancy herein did not occur as a result of an unforeseeable occurrence. The law was quite clear as to the next time when- an election would be necessary. Lack of awareness of the appropriate section of law is certainly not the type of unforeseeable occurrence for which a general power to fill vacancies was intended. Additionally, petitioner Daniel ewicz may have relied upon respondent dowdy’s failure to file petitions in deciding to seek this post and in the way the campaign was pursued. Real prejudice might result from permitting an interpretation of these rules in a way which permitted a circumvention of the specific process set forth in those rules (either “old”, “new” or both).
The conclusion which this court feels compelled to draw is, therefore, that the process utilized was insufficiently in compliance with either set of Republican Party county rules to effectuate a proper party nomination as required by section 6-108 of the Election Law.
Let us next consider the rules of the county Conservative Party. (Copy marked as adopted on June 13, 1973 and stamped as having been received for filing by the county board of elections on June 4, 1975.) Said rules provide for the establishment of town committees (art 3, § 3 [B]) and established a two-step nomination process as follows: “Each committee shall be responsible for the nomination of the candidate for public office in their particular area * * * All nominations, whether made by a Town, City or Village Committee, must be approved by the Executive Committee of the County Committee.” (Niagara County Conservative Party Rules, p 7.)
The provisions for vacancies in these rules refer to vacancies on the county committee or in an office of the committee.
Article 5 of these rules generally provides for nominations by the county committee or the county executive committee. As noted in our earlier explanation of relevant rules of construction, a general provision should be read as covering those situations not covered by a specific provision.
*22 As noted above, these rules provide for a bipartite process involving first action by the town committee followed by approval of the county committee or county executive committee. There is no limiting language as to the mandate of this procedure. This process clearly was not adhered to here. Only the second part of the required process was complied with. As with the case of the Republican Party rules, the petitioner may have relied on the express requirements of these rules which are on file as a public record, and could be prejudiced by an interpretation of those rules which permitted the circumvention of their own procedures. This court cannot give its approval to such circumvention.
The process utilized by the Conservative Party to effectuate this nomination was insufficiently in compliance with its own rules to satisfy the requirements of section 6-108 of the Election Law.
A final concern of the court is that as a result of this inadvertent failure to comply with the required nomination process, the voters of this town will have only one choice for this office and the democratic political process will be vitiated. (See Matter of Brown v Ulster County Bd. of Elections, 100 Misc 2d 570; Matter of Hunting v Power, 20 NY2d 680.) We note, however, that the petitioner has alleged and respondent dowdy’s attorney has affirmed that respondent dowdy has been nominated by the independent party known as the Concord Party. This independent party appears to have filed independent petitions as required by law. This election will, therefore, not result in there being only one candidate. We take judicial notice of the fact that the nomination of a major party is, of course, in most cases preferable to an independent party nomination alone. However, we also note that in many towns and villages the electoral process for local office is conducted without nominations by the major parties. Our ruling will not eliminate an opportunity for the voters of this town to have a choice in the electoral process.
For the reasons stated above, it is the considered opinion of this court that the relief requested herein should be granted and the board of elections directed to invalidate *23 the certificates of nomination of respondent Amel S. Jowdy filed by the Republican and Conservative Parties.